THE LAW OFFICES OF GARY W. GORSKI
Gary W. Gorski - SBN: 166526
1207 Front St., Suite 22
Sacramento, CA  95814
Tel. (916) 965-6800
usrugby@gmail.com

Co-Counsel
THE LAW OFFICE OF DANIEL M. KARALASH
1207 Front St., Suite 15
Sacramento, CA  95814
Tel. (916) 787-1234

UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM LYNCH and JOANNA LYNCH, a married couple, individually, and on behalf of the general public.<br><br>Plaintiffs,<br><br>vs.<br><br>CARNIVAL CORPORATION, a Corporation of the Republic of Panama; CARNIVAL CORPORATION, a Florida Foreign Corporation; CARNIVAL plc, a Corporation of The United Kingdom; COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy a/k/a COSTA a/k/a/ COSTA CRUISE; COSTA CRUISE LINES, INC., a Florida Corporation; and JOHN DOES 1-10<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND **ADMIRALTY** JURISDICTION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs aver as follows:

**INTRODUCTION**

1.

1. MS Costa Concordia is a Concordia-class cruise ship operated by Costa Crociere (a subsidiary of Carnival Corporation) and built by the Fincantieri's Sestri Ponente yards in Italy.

2. Carnival and its various entities transact substantial travel business and solicitation of that business in California.

3. The name Concordia was intended to express the wish for "continuing harmony, unity, and peace between European nations."

4. Costa Concordia was the first of the Concordia-class cruise ships, followed by sister ships Costa Serena, Costa Pacifica, Costa Favolosa and Costa Fascinosa, and Carnival Splendor built for Carnival Cruise Lines.

5. On 13 January 2012 at about 9:45 pm, in calm seas and overcast weather, under command of Captain Francesco Schettino, Costa Concordia struck a rock in the Tyrrhenian Sea just off the eastern shore of Isola del Giglio, off the western coast of Italy about 100 km (62 mi) northwest of Rome.

6. This tore a 50 m (160 ft) gash on the port (left) side of her hull, which almost immediately flooded parts of the engine room and caused loss of power to her propulsion and electrical systems.

7. With water flooding in and listing, the ship drifted back to Giglio Island, where she grounded just 500 m (550 yd) north of the village of Giglio Porto, lying on her starboard (right) side in shallow water with most of her starboard side under water.

8. Despite the gradual sinking of the ship, its complete loss of power, and its proximity to shore in calm seas, an order to abandon ship was not issued until over an hour after the initial impact.

9. Although international maritime law requires all passengers to be evacuated within 30 minutes of an order to abandon ship, the evacuation of Costa Concordia took over six hours and not all passengers were evacuated.

10. Of the 3,229 passengers and 1,023 crew known to have been aboard, 30 bodies have been located, and two more passengers are missing and presumed dead.

11. Plaintiffs were surviving passengers on this ship.

**PARTIES**

12. Plaintiffs ADAM LYNCH and JOANNA LYNCH are husband and wife, residing in Eastern District of California.

13. Each of the Defendants is the alter ego of the other, and transact business jointly under a single umbrella known simply "CARNIVAL CRUISE" or "CARNIVAL CRUISE LINES."

14. Defendant, CARNIVAL CORPORATION ("CARNIVAL"), a/ka CARNIVAL CRUISE LINES, is a Panamanian corporation and is registered as a Florida foreign corporation with its principal place of business in Doral, (Miami) Florida.

15. Defendant CARNIVAL CORPORATION is a Corporation of the Republic of Panama.

16. CARNIVAL CRUISE LINES is a trademarked brand name known to the public as "Carnival".

17. CARNIVAL conducts substantial solicitation of travel business in California.

18. Defendant CARNIVAL CORPORATION transacts business in California as CARNIVAL CRUISE LINES.

19. Defendant CARNIVAL CORPORATION & PLC (CO.) ("CARNIVAL PLC") is a dually listed company with headquarters and principal places of business in both Southhampton, England and Miami, Florida.

20. CARNIVAL CORPORATION and CARNIVAL plc ("CARNIVAL") owns and operates several cruise lines which include: Carnival Cruise Lines (23 ships); Princess Cruises (17 ships); Holland America Line (15 ships); COSTA CRUISE (15 ships); P&O Cruises (7 ships); Cunard (3 ships); Seabourn (5 ships); AIDA (8 ships); P&O Cruises Australia (3 ships); Iberocruceros (4 ships); and Holland America Princess Alaska Tours (Tour Operation).

21. As of the date Plaintiffs traveled on the Costa Concordia, CARNIVAL uses an internet bate and switch tactic with "check the box" to purport to state venue and jurisdiction, but this is only done after payment is made, and not before.

22. Defendant COSTA CRUISE LINES, INC., ("COSTA CRUISE") is a Florida corporation with its principal place of business in Hollywood, Florida.

23. Upon information and belief, COSTA CRUISE LINES is a wholly owned subsidiary of CARNIVAL PLC.

24. Defendant, COSTA CROCIERE, S.P.A. ("COSTA CROCIERE"), is an Italian corporation and, upon information and belief, is a wholly owned subsidiary of Carnival.

25. COSTA CROCIERE has never applied for and received a certificate of authority from the State of California as a seller of travel.

26. In addition to the heavy marketing and sales done from the Unites States, COSTA CROCIERE engages in business and maintains an office in Florida.

27. Defendant CARNIVAL PLC, is a Corporation of The United Kingdom

28. COSTA CROCIERE, S.p.A, is a Corporation of the Republic of Italy.

29. JOHN DOES 1-10, (hereinafter collectively "Defendants").

30. "COSTA CRUISE" is the North American sales and marketing agent for "Costa Crociere".

31. Defendants CARNIVAL CORPORATION, a Corporation of the Republic of Panama a/k/a CARNIVAL CRUISE LINES; CARNIVAL CORPORATION, a Florida Foreign Corporation, a/k/a CARNIVAL CRUISE LINES d.b.a COSTA CROCIERE; CARNIVAL plc, a Corporation of The United Kingdom a/k/a CARNIVAL CRUISE LINES; COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy; CARNIVAL CORPORATION & PLC, a business entity of unknown type; COSTA CRUISE LINES, INC., a Florida Corporation; and COSTA CROCIERE, S.p.A., a Foreign Corporation d.b.a. COSTA CRUISE and JOHN DOES 1-10, pursuant to Rule 7.1 made

32. CARNIVAL made the following corporate disclosures: Defendant Carnival Corporation discloses that there are no parent corporations or publicly held corporations that hold ten percent or more of its stock. Defendant Costa Crociere S.p.A. discloses that it is a subsidiary (99%) of Carnival plc., which is a publicly traded corporation. Carnival Corporation holds approximately twenty percent of Carnival plc's stock. Defendant Costa Cruise Lines Inc.

discloses that it is a wholly owned subsidiary of Costa Crociere S.p.A, which is a subsidiary of Carnival plc.

33. CARNIVAL CORPORATION, a Corporation of the Republic of Panama a/k/a CARNIVAL CRUISE LINES ; CARNIVAL CORPORATION, a Florida Foreign Corporation, a/k/a CARNIVAL CRUISE LINES d.b.a COSTA CROCIERE;    CARNIVAL plc, a Corporation of The United Kingdom a/k/a CARNIVAL CRUISE LINES; COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy; CARNIVAL CORPORATION & PLC, a business entity of unknown type; COSTA CRUISE LINES, INC., a Florida Corporation; and COSTA CROCIERE, S.p.A., a Foreign Corporation d.b.a. COSTA CRUISE and JOHN DOES 1-10 transact business jointly in an enterprise simply known as Carnival Cruise and Costa.

34. Upon information and belief, Defendants are and were responsible for all of the events that lead to the injury and/or death of Plaintiffs.

35. Various others, presently unknown to Plaintiffs, participated as co-conspirators of the Defendants in violations of law alleged in this Complaint, and have engaged in conduct and made statements in furtherance thereof. The acts charged in this Complaint have been performed by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives, while actively engaged in the management of each Defendants' business or affairs. These others shall be referred to herein as the "John Doe Defendants."

## JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction

37. This Court also has subject matter jurisdiction because this matter presents a federal question.

38. This action is asserted within admiralty jurisdiction of this honorable court as that term is defined by § 9(h), Federal Rules of Civil Procedure.

39. In addition, there is complete diversity of citizenship, and the action exceeds $500,000.00, exclusive of interest and costs.  Therefore, plaintiffs assert this court's diversity jurisdiction as well.

40. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over the Defendants because they conduct substantial business in the State of California, have sufficient minimum contacts with the State, and otherwise avail themselves of the markets in this State, through promotion, sale, marketing, and distribution of their products and services in this State, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. The State of California has a substantial and paramount interest in preventing the practices alleged herein from occurring.

41. Plaintiffs have exhausted all administrative remedies, including California Civil Code §1770, et seq. (i.e., 1782), and presented its claim to Defendants before the filing of this lawsuit, and Plaintiffs have not been notified by Defendants that the deceptive trade practices have been cured.

42. Venue properly lies in this district because Defendants, as corporations, are "deemed to reside in any judicial district in which [defendants are] subject to personal jurisdiction;" and because Defendants conduct substantial business in this judicial district.

**AVERMENTS**

43. CARNIVAL CORPORATION, per its website, is the largest vacation company in the world. Its portfolio of leading cruise bands includes Carnival Cruise Lines, Holland America Line, Princess Cruises and Seabourn in North America.

44. Defendants attract more than 8.5 million guests annually.

45. Costa is a seller of goods, advertised a cruise in the State of California.

46. The advertisement was a contractual offer with Costa as the offeror.

47. Plaintiffs purchased tickets for a cruise based on the advertisement to California residents specifically, as California residents are specifically targeted with huge discounts that are not offered to citizens of other states.

48. The purchase of tickets in California constituted acceptance of the offer made in California.

49. When the offer was accepted, a contract was formed.

50. The contract was formed in the State of California.

51. A seller of cruises in the State of California must be licensed and bonded to sell in the State of California.

52. Costa is not licensed and bonded in the State of California, which constitutes fraud committed in the State of California.

53. After the contract was formed, Costa Concordia issued an email ticket with terms and conditions that varied from the advertisement.

54. The issuance of the email ticket with different terms and conditions from the contracted terms and conditions constitutes false advertising and additional fraud.

55. Plaintiffs contracted for a 2-way cruise.

56. Plaintiffs were forced to leave the ship for their own safety and thus prevented from completing the cruise.

57. Defendants have breached their contract with Plaintiffs.

58. Defendants advertised a cruise that would begin and end at appropriate piers.

59. Plaintiffs cruise began at a pier and ended in the ocean.

60. The premature end of the cruise, a crash, was not caused or precipitated by accident, force majeure, or by any circumstances which Costa Concordia, (a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines), could not, with due professional diligence, reasonably foresee or avoid.

61. The end of the cruise was precipitated by an agent of Costa Concordia intentionally or recklessly veering the ship off course.

62. When the ship veered off course, it capsized.

63. When the ship capsized, its passengers were left to fend for themselves.

64. There were not enough life jackets to accommodate the number of passengers on the cruise.

65. The captain and other crew members abandoned ship before all passengers were safely evacuated.

66. Mrs. Lynch helped several passengers find their way off ship, and therefore

conferred a benefit to Defendants.

67. Were it not for Costa false advertising, Plaintiffs would not have purchased tickets for the fateful cruise. But for the deceptive and illegal advertising, the failure to perform, breach of contract and dereliction of duty, the Lynch family would not have suffered damages.

68. On January 13, 2012, Costa Cruises' vessel, the Costa Concordia, departed from Civitavecchia, Italy with approximately 3,200 passengers and 1,000 crew members on a seven-day voyage.

69. Costa Concordia was sailing on a Mediterranean cruise from Civitavecchia with scheduled calls at Savona, Italy; Marseille, France; Barcelona, Spain; Palma de Mallorca; Cagliari and Palermo, Italy.

70. At approximately 10:00pm CET, Costa Concordia struck a rock off the coast of Isola del Giglio, tearing a gash in its hull which let water pour into the engine rooms causing significant damage to the vessel which caused it to capsize.

71. Costa Concordia's Captain, Francesco Schettino, delayed the order to abandon ship and deploy the lifeboats.

72. Captain Schettino, instead of being the last man to leave the vessel and using all reasonable efforts to assure that all passengers and crew members are evacuated to safety, breached his duty as the master of his vessel, and abandoned his ship in the first available opportunity he had.

73. Based on a recording of a telephone conversation between the captain and the port authority, Captain Schettino was ordered by the coastguard to return to the stricken vessel after he claimed that the evacuation was almost complete when it had scarcely begun.

74. According to reports, Captain Schettino's decision to sail close to Isola del Giglio was attributed by the captain to Defendants' management in putting him under intense pressure to sail the cruise ship close to the island in order to present a spectacle to Costa Concordia's passengers.

75. During a telephone conversation with his friend in the hours after he was arrested, Captain Schettino said: "Management was always saying 'pass by there, pass by there.'

8.

Someone else in my position might not have been so amenable to pass so close but they busted my balls, pass by there, pass by there, and now I'm paying for it."

76. Captain Schettino attributed his action to the cruise company encouraging the practice of sailing close to the island because it was good "publicity" and went down well with passengers in the increasingly competitive cruise ship business.

77. Due to Captain Schettino's cowardly and reckless action and Defendants' negligent practice, 16 people are dead and 16 more remain missing and over 4,000 people have suffered damages and continue to suffer damages.

78. As a result of Defendants' conduct (including their acts of concealment), Plaintiffs have suffered and continue to suffer damages.

FIRST CAUSE OF ACTION  - Maritime Tort.

79. Plaintiffs hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

80. Defendants failure to implement safety procedures and its acts of negligence such as failing to perform the safety drill, policy failures that allowed a captain to abandon ship before the passengers, and lack or failure of a warning system to notify the crew that they were off course, were negligent acts that knowingly put the Plaintiff in peril of his life.

81. Defendant acted intentionally or recklessly with knowledge that damage would probably result to Plaintiff.

82. As a direct and proximate result of Defendants' negligent conduct, the Plaintiff suffered and continues to suffer damages. Defendants acted intentionally and hence no limits of liability should be applied in this case.

SECOND CAUSE OF ACTION  - Deceptive Trade Practice

83. Plaintiffs hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

84. Defendants have engaged in deceptive acts or practices in violation of California Civil Code §1770, in connection with the transaction noted above and hereinafter below. Specifically, Defendants violated California Civil Code §1770 by selling travel services in

9.

the following manner:

    (a)    Passing off services as those of another (§1770(a)(1)). Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, crashed into rocks on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.

    (b)    Misrepresenting the source, sponsorship, approval, or certification of services (§1770(a)(2)). Carnival used its name to sell Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, crashed into rocks on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.

    (c)    Misrepresenting the affiliation, connection, or association with, or certification by, another (§1770(a)(3)). Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, crashed into rocks on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.

    (d)    Using deceptive representations or designations of geographic origin in connection with services (§1770(a)(4)). Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, crashed into rocks on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.

    (e)    Representing that services have sponsorship, approval, characteristics, uses, and benefits which they do not have (§1770(a)(5)). Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, crashed into rocks

on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.Representing that services are of a particular standard, quality, or grade, if they are of another (§1770(a)(7)), e.g., safe. Costa Concordia, a cruise ship operated by Costa Crociere, a subsidiary of Carnival Cruise Lines, lacked standard safety equipment, policies and procedures, to ensure safety for its passengers.

(f) Advertising goods or services with intent not to sell them as advertised (§1770(a)(9)).

(g) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or which are prohibited by law (§1770(a)(14)).

(h) Inserting an unconscionable provision in the contract. Carnival used its name to sell Costa Concordia until Costa Concordia crashed into rocks on January 13, 2012. Carnival then claimed no ownership and put forth a contract provision requiring litigation in Genoa, Italy.

85. Injunctive relief is sought on behalf plaintiffs and the public pursuant to California Civil Code §1770, et seq. (i.e., 1782) that Defendants stop all said false advertising practices, and notify all past consumers of their acts so they can be appropriately subjected to United States courts jurisdiction, without having to litigate said claims in Genoa, Italy.

86. THIRD CAUSE OF ACTION - intentional tort, fraud in the inducement and Punitive Conduct

87. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

88. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care and was in reckless disregard for the rights of the Plaintiffs. Defendants' conduct has been outrageous and outside the bounds of decency. Defendants should be punished

11.

due their conduct of putting others at risk of serious injury and death in order to make more profit. Plaintiffs hereby request an award of punitive damages to appropriately punish Defendants for their extreme misconduct.

### FOURTH CAUSE OF ACTION II - Breach of Contract

89. Plaintiffs hereby incorporate and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint

90. Defendants offer to sell tickets to Plaintiffs claiming to be a safe cruise liner and offering to take them from Civitavecchia.

91. Plaintiffs accepted Defendants' offer and purchase tickets relying on Defendants express warranty that a trip aboard Defendants' ship was safe and that were going to be taken on a safe manner from Civitavecchia.

92. In addition, Defendants reach out to California consumers by offering specific discounts to Californians.

93. Defendants breached the contract by not providing a safe trip aboard the Costa Concordia and by failing to arrive safely at its final destination.

94. As a direct and proximate result of Defendants' breach, the Plaintiffs suffered and continue to suffer damages.

95. Plaintiffs sustained substantial and ascertainable losses of money and/or property and other damages, in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION III - Gross Negligence

96. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

97. Defendants had a duty to Plaintiffs to operate the cruise ship in a safe manner as to avoid causing injury to Plaintiffs.

98. Defendants particularly had a duty to evacuate Plaintiffs on a timely and safe manner as to avoid emotional distress, injury and death to Plaintiffs.

99. In addition, Defendants had a duty to inform Plaintiffs of the dangerous conditions existent in the cruise ship at all times relevant to this complaint.

100. Defendants had a duty to adequately test its warning systems as to avoid dangerous conditions leading to the emotional distress, injury and death of Plaintiffs.

101. Defendants were on notice of the existent danger and failed to evacuate Plaintiffs upon impact as to avoid emotional distress, injury and death to Plaintiffs.

102. Moreover, Defendants had a duty to provide true and accurate information to the Plaintiffs to prevent undue risks arising from the foreseeable acts of Defendants.

103. Defendants had the duty to maintain the Captain aboard the cruise ship as provided by existent laws.

104. Defendants were grossly negligent, and breached the duty owed to Plaintiffs and said conduct was reckless, justifying an award of punitive damages.

105. SIXTH CAUSE OF ACTION IV - FALSE ADVERTISING and DECEPTIVE TRADE PRACTICES [Cal. Bus. & Prof. Code §§ 17200 et seq. & 17500 et seq.]

106. Plaintiffs, incorporates by reference paragraphs 1 through 33 as though the same were set forth herein at length.

107. Plaintiff claims the remedies available for injunctive relief and attorney fees.

108. Plaintiff is entitled to an award of attorneys fees, interest and costs per the contract.

WHEREFORE, Plaintiffs prays for judgement against Defendants, and each of them, as follows:

1. For actual damages in the amount of $350,000.00 each.
2. For Compensatory damages according to proof;
3. For out-of-pocket costs according to proof;
4. For interest according to proof,
5. For the costs of this suit incurred herein;
6. Attorneys fees;
7. Issuance of Warrant for Maritime Arrest
8. Injunctive relief prohibiting adding terms to E-tickets after payment.

13.

9. For such other and further relief as the Court may deem proper.

DEMAND FOR JURY TRIAL IS MADE

DATED: January 11, 2013

Respectfully submitted,
/s/ Gary W. Gorski
Attorney for Plaintiffs